# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

COMMONWEALTH *vs.* STEPHEN C. ROY.

Hampden. March 6, 1995. - April 6, 1995.

Present: WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Lewdness. Statute,* Construction. *Constitutional Law,* Ex post facto law.

In a prosecution for violation of G. L. c. 272, § 53, upon an allegation that the defendant was a lewd, wanton, and lascivious person in speech or behavior, the defendant's motion for a required finding of not guilty should have been allowed where the evidence was speculative as to an essential element of the offense, namely, whether the sexual conduct that the defendant was soliciting was to occur in a private place or in a place that could be found to be public. [3-4]

This court declined to adopt a construction of G. L. c. 272, § 53, that would constitute, in the circumstances, an ex post facto application of law. [4]

COMPLAINT received and sworn to in the Chicopee Division of the District Court Department on May 11, 1993.

On transfer to the jury session, the case was heard by *Peter J. Rutherford,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Michelle Braun*, Committee for Public Counsel Services, for the defendant.

*Michael J. Hickson*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant, Stephen C. Roy, was charged in the District Court with being a lewd, wanton, and lascivious person in speech or behavior in violation of G. L. c. 272, § 53 (1992 ed.).[1] The defendant waived his right to a jury trial, and after a bench trial, was found guilty of the charge. The defendant appealed, and we allowed an application for direct appellate review. We conclude that the defendant's motion for a required finding of not guilty under Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979), should have been allowed. Accordingly, we reverse his conviction and direct the entry of a judgment for the defendant.

The Commonwealth presented evidence in its case as follows. About 5:30 P.M. on April 15, 1993, Susan (a pseudonym) age fourteen years, was walking home from a friend's house. She was accompanied by her four year old cousin and a thirteen year old friend. The defendant, who was driving a black automobile with black-tinted windows, encountered the three children while they were waiting to cross a public street. The defendant slowly drove by them. As they crossed the street, the defendant turned his vehicle around and slowly drove by them again. When the defendant, still continuing to drive slowly, approached the children a third time, the friend ran away with Susan's cousin, leaving Susan alone and frightened.

The defendant's vehicle kept pace with Susan as she crossed the street and pulled up beside her and stopped. The

---

[1] This statute reads in full as follows: "Common night walkers, common street walkers, both male and female, common railers and brawlers, persons who with offensive and disorderly acts or language accost or annoy persons of the opposite sex, lewd, wanton and lascivious persons in speech or behavior, idle and disorderly persons, disturbers of the peace, keepers of noisy and disorderly houses, and persons guilty of indecent exposure may be punished by imprisonment in a jail or house of correction for not more than six months, or by a fine of not more than two hundred dollars, or by both such fine and imprisonment."

defendant and Susan were about fifteen feet apart, when he lowered the window and said, "Hey, girl." Susan looked at the defendant, who asked her, "What happened to your friend?" Susan testified that the defendant said that he had "something, big, hard and juicy, and [you'd] like it." At this point, another automobile, driven by a woman, pulled up, and the woman asked Susan if the defendant was bothering her. When Susan replied affirmatively, the defendant drove away from the area.

General Laws c. 272, § 53, provides criminal penalties for "lewd, wanton and lascivious persons in speech or behavior." See note 1, *supra.* In *Commonwealth* v. *Sefranka*, 382 Mass. 108, 117-118 (1980), in order to avoid constitutional problems, we construed this language "to prohibit only the commission of conduct in a public place, *or the public solicitation of conduct to be performed in a public place,* when the conduct committed or solicited involves the touching of the genitals, buttocks, or female breasts, for purposes of sexual arousal, gratification, or offense, by a person who knows or should know of the presence of a person or persons who may be offended by the conduct" (emphasis added). The defendant's prosecution involved the solicitation portion of the crime.

The evidence warranted a finding that the defendant's statement to Susan constituted a public solicitation of her by him to engage in sexual activity of the type described above. The defendant's solicitation of Susan was broken off due to the intervention of the woman driver who, according to the evidence, was perceptive enough to sense irregular contact between the defendant and Susan and Susan's need for assistance. As a result of this intervention, the defendant's ultimate purpose was frustrated. The evidence leaves to speculation whether his remark was a prelude to sexual contact which was to occur in a private place, or in a place that could be found to be public. See, as to the public place element of the offense under consideration, *Commonwealth* v. *Ferguson*, 384 Mass. 13, 15-16 (1981) (for purpose of statute, sexual act performed in automobile in rear of parking lot

at night was not performed in public place); *Commonwealth v. Kelley*, 25 Mass. App. Ct. 180, 183-185 (1987) (sexual act performed on private property where privacy reasonably could have been expected not performed in "reckless disregard" of substantial risk of exposure to other persons).

The Commonwealth points out that the *Sefranka* decision involved the public solicitation of an adult male by another adult male to engage in oral copulation. See *Commonwealth v. Sefranka, supra* at 109-110. Because of the need to protect minors from being accosted in public, the Commonwealth argues that the solicitation of a minor to engage in prohibited conduct should be enough to establish the crime without the need for a showing that the indecent act would occur in a place that could be found to be public. Acceptance of the Commonwealth's argument, however, would require us to construe the lewd, wanton, and lascivious language in § 53 to set forth, when a minor is involved, a crime different from the one defined in the *Sefranka* case. The defendant's conviction could not be upheld under the Commonwealth's suggested expanded definition of the crime because of the barrier posed by ex post facto principles. See *Commonwealth v. Catalina*, 407 Mass. 779, 783 (1990) ("An indictment . . . cannot be read to encompass a new and different definition of the crime that did not exist at the time of the occurrence which gave rise to it"). In any event, we think the construction of G. L. c. 272, § 53, proposed by the Commonwealth is a matter which is better considered by the Legislature.

We conclude that the Commonwealth's evidence left an essential element of the offense to speculation. As a consequence, the defendant was entitled to an acquittal under his rule 25 (a) motion.[2]

---

[2]Because of this conclusion, we need not consider the defendant's additional constitutional arguments (which may not have been properly raised below) that the words spoken by him constitute speech protected by the First Amendment to the United States Constitution, and that the language in § 53 pertaining to "lewd, wanton and lascivious persons" remains overbroad in violation of due process rights protected by the Fourteenth Amendment to the United States Constitution.

The judgment is reversed, and judgment is to be entered for the defendant.

*So ordered.*